## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

BARRY ALAN SULLIVAN, and
JENNIFER DIESMAN SULLIVAN,

      Plaintiffs,

v.

EBNER REAL ESTATE, LLC d/b/a SIGNATURE PROPERTIES
EBNER & ASSOCIATES a/k/a EBNER & ASSOCIATES SIGNATURE PROPERTIES, a
Colorado Limited Liability Company, and
JESSE EBNER, individually,

      Defendants.

---

## COMPLAINT

---

Plaintiffs, Barry Alan Sullivan and Jennifer Diesman Sullivan, for their complaint against

Defendants Ebner Real Estate, LLC, d/b/a Signature Properties Ebner & Associates

a/k/a Ebner & Associates Signature Properties and Jesse Ebner allege:

## <u>PARTIES</u>

1. Barry Alan Sullivan and Jennifer Diesman Sullivan are individuals that reside in Honolulu,

    Hawaii with a mailing address of 733 Bishop Street, Suite 2900, Honolulu, Hawaii 96813.

2. Ebner Real Estate, LLC dba Signature Properties Ebner & Associates aka Ebner &

    Associates Signature Properties is a Colorado Limited Liability Company with a principal

1

office street address of 123 Whiterock Avenue, Crested Butte, CO 81224, and a principal office mailing address of P.O. Box 2452, 123 Whiterock Avenue, Crested Butte, CO 81224.

3. Jesse Ebner is an individual with a residential postal address of PO Box 2452, Crested Butte, CO 81224, and a physical address of 326 Elk Avenue, Suite D, Crested Butte, CO 81224.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction in this matter is proper based on diversity of the parties, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), as required under 28 U.S.C. § 1332(a)(1).

5. Venue of this matter is proper in the United States District Court for the District of Colorado, pursuant to 28 U.S.C. § 1391(b), because all defendants are residents of the State of Colorado, and a substantial part of the events or omissions giving rise to the claim set forth herein occurred in this judicial district, and the property that is the subject of this action is situated in the State of Colorado.

## STATEMENT OF FACTS

6. On or about December 5, 2016, Barry Alan Sullivan ("Sullivan") first contacted Jesse Ebner ("Ebner") by form inquiry on Ebner's website seeking buyer brokerage assistance

to acquire property in or near Crested Butte, Colorado on which Sullivan would construct a family home.  Ebner is the licensed real estate broker for Ebner Real Estate, LLC dba Signature Properties Ebner & Associates aka Ebner & Associates Signature Properties ("Signature").

7.  Sullivan and Ebner met in Crested Butte during a visit by Sullivan later in December 2016 and Ebner advised that she was and would be Sullivan's broker relating to his potential acquisition of property in Crested Butte.   Specifically, Sullivan sought assistance in identifying and acquiring a lot for the construction of a residential dwelling, which dwelling Sullivan intended as a residence for himself and his family.

8.  In January 2017, Ebner confirmed her agreement to be appointed and to act as Sullivan's agent and broker presenting Sullivan with a Buyer's Agency Agreement and a document entitled, "Definitions of Working Relationships."  Ebner proposed to represent Sullivan as his agent regarding the identification and purchase of suitable properties in or around Crested Butte.

9.  Sullivan executed the Buyer's Agency Agreement. Ebner and Signature agreed to act as Sullivan's agent and broker and thereafter did so act at all relevant times and with respect to the events giving rise to this lawsuit.

10. In January 2017, Ebner prepared and submitted an offer on a property at 7 Aspen Hill, Crested Butte, on Sullivan's behalf ("Aspen Hill").   Aspen Hill was an unimproved residentially zoned lot in the Town of Crested Butte.  Said transaction did go into escrow

but, upon discovery in diligence by Sullivan and Ebner of substantial easements across the property that made construction and use undesirable, Sullivan terminated the contract.

11. Thereafter, Ebner and Signature continued to act as Sullivan's agent relating to identification of properties Sullivan might acquire.  Initially, this was limited solely to a property that could be used for Sullivan to construct a family home but also included potential investment properties that Sullivan would manage following his relocation to Crested Butte.  Ebner did submit at least one backup offer on an investment property but no transaction was ever put into escrow or concluded.

12. On August 16, 2017, Ebner and Signature sent an email to Sullivan identifying 113 Sopris Avenue ("113 Sopris") as a suitable property upon which he could build his family home. 113 Sopris had an A-Frame home on it and a garage and was not an unimproved lot as had been a primary focus of Sullivan and Ebner to that point for his future home.

13. Ebner represented and stated as fact in an email on August 16, 2017, "The home isn't historic and can be demolished or remodeled."  In fact, the home was considered historic by the Town of Crested Butte and therefore could not be demolished.  Ebner failed to inform Sullivan at any time that her statements were untrue.

14. Ebner promoted 113 Sopris as "one of the best lots in town on Sopris".

15. Sullivan considered 113 Sopris but before making a decision, 113 Sopris went under contract to another buyer.

16. On June 7, 2018, Ebner notified Sullivan that 113 Sopris was no longer under contract and was an appropriate property for Sullivan because it was not historic, it could be easily scraped, and a new home could be constructed on the lot.  Sullivan responded that he would consider 113 Sopris because, as Ebner had represented, he understood it could be "scraped" and he could "build new" on the lot.

17. Later on June 7, 2018, Ebner responded further by email that, "I love 113 Sopris and the potential offered there, big lot, not historic."  Again, Ebner expressly represented as fact that the home on 113 Sopris was "not historic" and as such could be demolished to make way for a new home for Sullivan and his family.

18. In that same email, Ebner differentiated 113 Sopris from another available property 117 Whiterock, by explaining that, "117 Whiterock is my next door neighbor and the house needs some work but also has great potential. It is historic though so you can't scrape that one."  Ebner made clear that a "historic" home could not be demolished (or "scraped") which is why 117 Whiterock would be unsuitable, whereas 113 Sopris was suitable because it was not historic and could be demolished/scraped.

19. At the time Ebner made these representation on or about June 7, 2018 regarding 113 Sopris, these representation were untrue.  Ebner never advised Sullivan at any time that her representations were untrue.

20. On June 12, 2018, Sullivan affirmed his interest in 113 Sopris and referenced a conversation he had with Mr. Don Pulley, a Crested Butte resident and the landlord who

was renting a house to Sullivan and his family for the month of July 2018, stating the following to Ebner: "one thing Don Pulley emphasized was to get confirmation from the City that the improvements are not considered historic, as he indicated that age alone may not be a reliable guide. So, if I do get under contract, I would want to request that confirmation. And of course, I would actually get started as soon as possible after closing on the process."

21. Ebner received Sullivan's June 12, 2018 email and, on at least three separate occasions thereafter, specifically reaffirmed that she had independently confirmed – including with the appropriate persons at the Town of Crested Butte -- that the home at 113 Sopris was not historic.

22. Relying upon the advice and representations of Ebner, including that the property was not historic, could be easily demolished and a new home constructed thereon, Sullivan signed a binding purchase and sale agreement ("PSA") to acquire 113 Sopris for $820,00.00.

23. Consistent with every representation made to date regarding her and Signature's agency relationship with Sullivan, Ebner signed the PSA for herself and Signature as "Buyer's Agent".

24. The PSA disclosed that Sullivan had never seen 113 Sopris in person.   Sullivan reasonably relied extensively upon Ebner, who had represented that she was raised in nearby Almont, was a long-time resident of Crested Butte, owned her own firm, and was

knowledgeable and experienced in the field and with many relationships in and with employees of the Town of Crested Butte regarding real estate, construction and redevelopment.

25. By the time Sullivan executed the PSA, Ebner had on multiple occasions represented to Sullivan that 113 Sopris was not historic, the structures could be easily razed, and that the property was suitable for redevelopment as a single-family home as Sullivan intended. At no time did Ebner suggest anything to the contrary and, in fact, Ebner distinguished 113 Sopris from other properties on the market that Ebner advised were unsuitable because the homes on those properties were historic or the properties were otherwise unsuitable for easy redevelopment into a new single family home.

26. Sullivan never would have contracted to buy 113 Sopris, or closed on 113 Sopris, but for the false representations and assurances provided by Ebner and Signature as stated herein.

27. On or about June 21, 2018, following execution of the PSA but before Sullivan arrived in Crested Butte in July, Ebner obtained and provided an Improvement Location Certificate ("ILC") for 113 Sopris, which document is prepared by a surveyor and used by title companies in connection with the issuance of title insurance.  This ILC had been prepared for a prior buyer.

28. Upon receiving and reviewing the ILC, Sullivan emailed Ebner and asked, among other things, as follows:

"The ILC shows a 100' (sic) flood zone, which includes about 30% of the existing garage

> o   Can improvements be done within that area?  That is, can I build a new garage that partially is within the zone?  If so, does it have to be on stilts or anything?"

29. Ebner responded on June 21, 2018 that, "I am going to have to call the building department regarding the flood zone. Since there is already a garage in the flood zone, I assume they would let you build a new garage there as well. If it was going to be residential on the first floor that might be different. They may require a more robust foundation with water proofing material as well."

30. Ebner, as buyer's agent for Sullivan, actively undertook a duty to investigate the local zoning and building regulations applicable to 113 Sopris, including relating to the flood zone question Sullivan asked.

31. Ebner thereafter advised Sullivan that she was, "Still working on the Flood zone info" by email later on June 21, 2018.

32. Ebner thereafter advised Sullivan, in an in-person meeting that took place at the offices of Signature in July 2018, that she had confirmed that as she had previously written by email, the presence of the flood zone shown on the ILC would not have any material impact to the demolition of the existing structures or the redevelopment of the property as a single-family home (with garage).

33. Sullivan reasonably relied upon Ebner's representation that she had investigated the issue and had confirmed that there were no redevelopment issues of concern relating to the flood zone identified on the ILC.

34. Despite Ebner's express representations, in fact the Town of Crested Butte has not allowed demolition of a structure that is in or partially in a designated flood zone.

35. Despite Ebner's express representations, in fact the Town of Crested Butte has not allowed redevelopment of any new structure on a lot of which any portion is in the flood zone (per the 2013 FEMA line shown on the ILC) unless and until the owner first obtains a comprehensive flood plain determination involving the creating of base flood elevations and the determination of 100-year flood levels for Coal Creek (the source of the flood concern) does not reach any portion of the property.

36. Sullivan has expended months of time and thousands of dollars on attorneys and engineers to attempt to satisfy the Town of Crested Butte but has been unable to obtain any approval or agreement that the existing garage can be removed or that a new home can be constructed at 113 Sopris.  This work is ongoing and continues at substantial financial cost, considerable delay, and extensive personal and emotional stress on Sullivan and his family who remain unable to permit and construct their residence at 113 Sopris.

37. Sullivan never would have closed on 113 Sopris but for the assumption of duty Ebner undertook relating to the flood zone concerns Sullivan raised and the false

representations and assurances provided by Ebner as stated herein relating to the flood zone.

38. Sullivan and his family arrived in Crested Butte on or about July 3, 2018.  Sullivan worked expeditiously relating to the transaction despite being with his wife and two daughters and hosting his two in-laws, his sister-in-law and her husband, and his brother and his wife and their three daughters, most of whom had never been to Crested Butte.

39. Sullivan met with Ebner on multiple occasions and, upon being advised by Ebner that his deadline to terminate the PSA without penalty was July 10, 2018, confirmed with Ebner that if the transaction fell through because of diligence he would proceed with acquisition of a property on Teocalli that Ebner had identified and which Sullivan and his wife Jennifer Diesman Sullivan had toured a few days earlier.

40. Prior to the closing on the PSA on July 25, 2018, Ebner again affirmed to Sullivan that she had confirmed the home at 113 Sopris was not historic and could be easily razed, the garage could be demolished despite being partially in a flood zone as shown on the ILC, a new home and garage could be constructed without difficulty (provided that Sullivan's new home and garage met the Town of Crested Butte design guidelines as to design, color, location, size, height, and such other requirements).  This included a meeting at the Signature offices between Sullivan and Ebner on or about July 22, 2018 at which time Sullivan specifically raised the issue, in detail, because of a dispute that had arisen regarding the details of a snow-storage easement the Seller was requesting and for which

the title company was unable to property cover in its title policy, including the removal of prior easements that had to be removed as a condition of closing.

41. Of note, Sullivan hired attorney Aaron Huckstep to revise and amend the snow-storage easement and prepare such other and further documentation to allow the title company to remove certain exceptions that it had been unwilling to remove and which would have delayed or prevented closing.

42. The PSA closed on July 25, 2018.  Sullivan paid 100% of the purchase price in cash. Sullivan directed title to be taken jointly with his wife Jennifer Diesman Sullivan.

43. Following closing, Sullivan met with prospective contractors, architects and other professionals to immediately commence all activities necessary to demolish the existing structures and construct a new home (and garage).  One such person Sullivan met with was Tony Veit, a contractor recommended to Sullivan by Pulley.  Sullivan did not retain Veit in any capacity but they discussed his potential engagement on the project.

44. On August 8, 2018, Sullivan received a phone call and email from Eric Treadwell, the "Vacation Inspector for the Town of Crested Butte."   Treadwell contacted Sullivan because, "[I]t has been brought to [his] attention [by Tony Veit] that you are considering demolishing the existing dwelling and replacing it with a new dwelling."  Sullivan explained that he intended to rent the existing home at 113 Sopris through the Winter until construction could start in Spring 2019, to which Treadwell explained that the short term vacation rental license – which the seller had for the property – would not make sense.

45. On August 13, 2018, consistent with all stated intents and plans, Sullivan proceeded to retain a surveyor and geotechnical engineer and shortly thereafter Somrak Concept and Structure for design/permit/construction of his new home.  General contractor and project manager Jeremy Erickson of Somrak Concept and Structure advised that, "I think planning to get your design through the Town submittals this winter is reasonable with the goal of building this coming spring IF we are able to fit it into our schedule with our other projects."

46. On August 17, 2018, Sullivan received a phone call from Veit that he immediately communicated to Ebner as follows, requesting that she identify by name who she spoke with at the Town of Crested Butte to determine if it is the same person Veit claims to have spoken with:

> "I was advised this morning that I cannot demolish the A-Frame on the property because the Town of CB considers it historic. This of course would be contrary to the representations made when I bought the property and the listing itself and every understanding I had. Before I hire Huck on the matter, I was hoping that you can confirm who you spoke with at the town to confirm it was not historic and/or who the seller's agent had done so. The person who gave me this info is Tony Veit based upon his meeting with Molly Murphy (sic) [Minneman], whom I am told is the person who would speak for the town on the matter."

47. By reply email of the same date, Ebner responded that "The people to talk to at town are Jessica Early and Molly Minneman.  They are the experts in the historic properties.  It was represented that the property could be demolished by the listing in multiple places including the previous listings in our MLS."

48. Ebner also stated that she quickly confirmed herself that the Town considered 113 Sopris historic because "The building is listed on the historic registry…" and, in 1974, was already "10 years old" – meaning that the home was over 50 years at the time of sale which would make it historic under the Town's policy.

49. Ebner's response suggested that, contrary to every factual statement she had made on the issue to date and that while she knew precisely whom to talk to at the Town of Crested Butte to conclusively resolve the issue, she apparently had never done so and had relied upon the unverified statements of another agent.

50. At no time prior had Ebner stated, suggested or hinted that she relied upon another agent for her factual representations regarding the historical status of 113 Sopris and how easily she claimed it would be to demolish the existing structures.  In fact, she had represented specifically to the contrary.

51. Thereafter, Ebner failed to provide any assistance in any material way in seeking a resolution of this issue, Ebner failed to provide any evidence of the communications she had previously claimed to have with Town officials, Ebner failed to provide any evidence of communications she had with seller or seller's agent, Kathy Benson, regarding her

factual representation to Sullivan that she had investigated the issue and the home was, in fact, not historic and could be easily demolished and replaced.

52. Despite diligent and extensive effort, Sullivan and his team of consultants and legal counsel were unable to establish any evidence that the home at 113 Sopris was less than 50 years old.

53. It is very likely that Sullivan would have received his demolition permit before December 31, 2018, and proceeded to redevelop the property as anticipated but for the issues that Ebner had undertaken a duty to investigate and had specifically misrepresented the facts: The historic status of the existing home, the ability to demolish, the impact of the flood zone designation on a portion of the property (including a portion of the existing garage), and the ability to build a new home and garage.

54. On or about January 7, 2019, the Town of Crested adopted an emergency moratorium on demolition of structures within the Town.  This ordinance would have had no impact upon Sullivan but for the Defendants' negligence, professional negligence, misrepresentations, and breaches of duty.  Among other things, Sullivan would not have purchased 113 Sopris and bought another property had he been accurately informed by Ebner of the truth of matters she undertook, and represented she undertook, to investigate and advise Sullivan on, including historical status, demolition, redevelopment and flood zone issues herein described.

55. On or about July 15, 2019, the Town of Crested Butte lifted the moratorium on all non-historic structures.  If the home on 113 Sopris was not historic as represented by Ebner or otherwise unimpacted by the flood zone designation, Sullivan could have demolished the home following this action.

56. On September 16, 2019, the Town of Crested Butte adopted Ordinance 2019-34 which changed the standards for what constitutes a historic structure, under which ordinance the home at 113 Sopris is no longer considered historic.

57. Ordinance 2019-34, however, materially changed the requirements for demolition of non-historic structures and, in addition, imposed a substantial and permanent restriction on all properties where an existing home is to be demolished and replaced with any new home that is more than 1 square foot larger in size than the structure that is demolished. Sullivan would not be subject to Ordinance 2019-34 but for the conduct of Ebner because Sullivan would not have purchased the property and would have purchased another suitable property and enjoyed all of the benefits of living in such home and gaining the appreciation of such home or, alternatively, had 113 Sopris been of the condition actually represented by Ebner than Sullivan would have long past proceed with demolition and construction of his new family home.

58. Sullivan remains unable to demolish and redevelop a primary residence at 113 Sopris and has incurred out-of-pocket expenses in attempting to resolve these issues, expended hundreds of hours of his professional time away from his job and family on such matters, and suffered substantial and continued distress due to his family's inability to take up

residence for all or part of the year at a home suitable for them.  Of note, the A-Frame at 113 Sopris is about 800 sf in size and is in tear-down condition with substandard ceiling heights, insulation, weather protection, heating systems, plumbing systems, and finishes.

59. Sullivan continues to rent the home on an intermittent basis in an attempt to cover his costs of ownership.

60. 113 Sopris is unique amongst properties Sullivan could have purchased in Summer 2018 in that it is not livable or saleable to most buyers and, because it cannot be developed as Sullivan or nearly any buyer would intend, it has not appreciated or appreciated at a small fraction of the rate of other properties not so impacted.

61. Ebner earned a commission at the closing of 113 Sopris of over $24,000.

## FIRST CAUSE OF ACTION

### *Breach of Fiduciary Duty*

62.  The Sullivan plaintiffs (the "Sullivans") incorporate the allegations set forth in paragraphs 1 through 61 above.

63. At all times relevant to this dispute, Ebner and Signature were acting as fiduciaries of the Sullivans.

64. As buyer's agent, Ebner and/or Signature owed uniform duties to the Sullivans.

65. As buyer's agent, Ebner and/or Signature owed additional duties to the Sullivans.

66. Ebner and Signature undertook heightened duties to the Sullivans, not only as their agent but specifically relating to the historical status of the property, the ease of demolition and redevelopment, and the lack of impact of having a portion designated as a flood zone.

67. Ebner and or Signature breached her/its duties.

68. Because of the breach of duties, the Sullivans have been damaged.

## SECOND CAUSE OF ACTION

### *Misrepresentation*

69. The Sullivans incorporate the allegations set forth in paragraphs 1 through 68 above.

70. Ebner and/or Signature made untrue and materially inaccurate representations to Sullivan as detailed hereinabove.

71. Ebner and/or Signature knew or should have known that the representations were false.

72. Ebner and/or Signature acted with reckless, wanton or intentional disregard to the truthfulness or accuracy of the representations they made;

73. Sullivan was unaware that Ebner and/or Signature's representations were false.

74. The representation was made with the intention or effect that the Sullivans would purchase 113 Sopris.

75. The Sullivans relied on the representations.

76. The Sullivans' reliance was reasonable.

77. The Sullivans have been damaged.

78. The Sullivans' reliance upon Ebner and Signature's representations caused their damages.

### THIRD CAUSE OF ACTION

#### *Negligence*

79. The Sullivans incorporate the allegations set forth in paragraphs 1 through 78 above.

80. Ebner and Signature owed a duty to the Sullivans.

81. Ebner and Signature breached their duty to the Sullivans.

82. As a result of Ebner's breach of duty, the Sullivans have been damaged.

### FOURTH CAUSE OF ACTION

#### *Constructive Fraud*

83. The Sullivans incorporate the allegations set forth in paragraphs 1 through 82 above.

84. As buyer's agent, Ebner and Signature established a confidential relationship with the Sullivans.

85. As buyer's agent, Ebner and Signature established a fiduciary relationship with the Sullivans.

86. As buyer's agent, the confidential and fiduciary relationship established between Ebner and Signature and the Sullivans afforded Ebner and Signature the power and means to unduly take advantage of the Sullivans during the transaction underlying their purchase of 113 Sopris.

87. Ebner and Signature breached their fiduciary duties to the Sullivans.

88. Ebner and Signature violated the confidence and injured the Sullivans.

89. Whether or not Ebner and/or Signature intended to deceive the Sullivans, or intended to act dishonestly, because of the special confidence of their established fiduciary relationship, the Sullivans relied on their representations.

90. As a result of Ebner and Signature's breach of the duties connected to their confidential and fiduciary relationship with the Sullivans, the Sullivans have been damaged.

91. Ebner and Signature gained an advantage by means of their deceptive material representations and omissions at the expense of the Sullivans.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

(1) That the Court award Plaintiffs judgment against Defendants in such sums as shall be determined to fully and fairly compensate the plaintiffs for all general, special, incidental, and consequential damages incurred, or to be incurred, as the direct and proximate result of the acts and omissions of Defendants, in an amount to be proven at trial;

(2) That the Court award Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred; and

(3) That the Court award pre- and post-judgment interest on any award of damages to the extent permitted by law;

(4) That the Court award such other and further relief as it deems necessary and proper in the circumstances.

DATED the 23rd day of July 2020.

s/ Neal Cohen
**Neal Cohen**
Sullivan Cohen LLC
1495 Canyon Boulevard
Boulder, CO 80302
Telephone: (303) 835-4993
Email: neal@sullcoh.com
Attorney for Plaintiffs Barry Alan Sullivan and Jennifer Diesman Sullivan

Plaintiffs' Address: 733 Bishop Street, Suite 2900, Honolulu, Hawaii 96813