# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-2174-WJM-GPG

BARRY ALAN SULLIVAN, and
JENNIFER DIESMAN SULLIVAN,

    Plaintiffs,

v.

EBNER REAL ESTATE, LLC d/b/a SIGNATURE PROPERTIES
EBNER & ASSOCIATES a/k/a EBNER & ASSOCIATES SIGNATURE PROPERTIES, a
Colorado Limited Liability Company, and
JESSE EBNER, individually,

    Defendants.

---

## SCHEDULING ORDER

---

### 1. DATE OF CONFERENCE
### AND APPEARANCES OF COUNSEL AND PRO SE PARTIES

The Scheduling Conference was held on October 1, 2020 at 10:00 a.m. in Courtroom 323 of the United States Courthouse, Grand Junction, Colorado. Parties appeared telephonically.

**Plaintiffs:** Appearing for Plaintiffs Barry Alan Sullivan and Jennifer Diesman Sullivan were Neal Cohen and Jennifer Sullivan of Sullivan Cohen LLC, 1495 canyon Boulevard, Boulder, CO 80302, (303) 835-4993.

**Defendants:** Appearing for Defendants Ebner Real Estate, LLC d/b/a Signature Properties Ebner & Associates a/k/a Ebner & Associates Signature Properties ("Ebner Real Estate") and Jesse Ebner were

1

James M. Meseck and E. Catlynne Shadakofsky of the law firm of White and Steele, P.C., 600 17th Street, Suite 600N, Denver, CO 80202, (303) 296-2828.

## 2. STATEMENT OF JURISDICTION

Subject matter jurisdiction in this matter is proper based on diversity of the parties, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), as required under 28 U.S.C. § 1332(a)(1). Plaintiffs are citizens of the State of Hawaii. Defendant Jesse Ebner is a citizen of the State of Colorado. Defendant Ebner Real Estate, LLC has one member, Jesse Ebner, and its principle place of business is in Crested Butte, Colorado.

## 3. STATEMENT OF CLAIMS AND DEFENSES

1. **Plaintiffs:** In late 2016, Plaintiff Barry Sullivan ("Sullivan") contacted Defendant Jesse Ebner ("Ebner"), a real estate broker, about acquiring property in or near Crested Butte, Colorado on which Sullivan would construct a family home. Ebner is the licensed real estate broker for Defendant Ebner Real Estate, LLC. ("Ebner RE"). Sullivan engaged Ebner as his broker. Ebner identified various properties that did not work out.

On August 16, 2017, Ebner sent an email to Sullivan identifying 113 Sopris Avenue ("113 Sopris") as a suitable property upon which he could build his family home. 113 Sopris had an A-Frame home on it and a garage and was not an unimproved lot as had been a primary focus of Sullivan and Ebner to that point for his future home. Ebner represented as fact in an email on August 16, 2017, "The home isn't historic and can be demolished or remodeled." Although 113 Sopris went under contract to another buyer, on June 7, 2018, Ebner notified Sullivan that 113 Sopris was no longer under contract. She further represented that it was an appropriate property

for Sullivan because it was not historic, it could be easily scraped, and a new home could be constructed on the lot. Sullivan responded that he would consider 113 Sopris because, as Ebner had represented, he understood it could be "scraped" and he could "build new" on the lot. Later on June 7, 2018, Ebner responded further by email that, "I love 113 Sopris and the potential offered there, big lot, not historic." In fact, the home was considered historic by the Town of Crested Butte and therefore could not be demolished. Ebner failed to inform Sullivan at any time that her statements were untrue.

On June 12, 2018, Sullivan affirmed his interest in 113 Sopris and referenced a conversation he had with Mr. Don Pulley, a Crested Butte resident and the landlord who was renting a house to Sullivan and his family for the month of July 2018, stating the following to Ebner: "one thing Don Pulley emphasized was to get confirmation from the City that the improvements are not considered historic, as he indicated that age alone may not be a reliable guide. So, if I do get under contract, I would want to request that confirmation. And of course, I would actually get started as soon as possible after closing on the process." Ebner received Sullivan's June 12, 2018 email and, on at least three separate occasions thereafter specifically reaffirmed that she had independently confirmed – including with the appropriate persons at the Town of Crested Butte -- that the home at 113 Sopris was not historic.

Relying upon the advice and representations of Ebner, including that the property was not historic, could be easily demolished and a new home constructed thereon, Sullivan signed a binding purchase and sale agreement ("PSA") to acquire 113 Sopris for $820,00.00. Sullivan reasonably relied extensively upon Ebner, who had represented that she was raised in nearby

3

Almont, was a long-time resident of Crested Butte, owned her own firm, and was knowledgeable and experienced in the field and with many relationships in and with employees of the Town of Crested Butte regarding real estate, construction and redevelopment.  Ebner signed the PSA for herself and Ebner RE as "Buyer's Agent."

On or about June 21, 2018, following execution of the PSA but before Sullivan arrived in Crested Butte in July, Ebner obtained and provided an Improvement Location Certificate ("ILC") for 113 Sopris, which document is prepared by a surveyor and used by title companies in connection with the issuance of title insurance.  This ILC had been prepared for a prior buyer. Upon receiving and reviewing the ILC, Sullivan emailed Ebner and asked, among other things, as follows:

> "The ILC shows a 100' (sic) flood zone, which includes about 30% of the existing garage
>
> o  Can improvements be done within that area?  That is, can I build a new garage that partially is within the zone?  If so, does it have to be on stilts or anything?"

Ebner responded on June 21, 2018 that, "I am going to have to call the building department regarding the flood zone. Since there is already a garage in the flood zone, I assume they would let you build a new garage there as well. If it was going to be residential on the first floor that might be different. They may require a more robust foundation with water proofing material as well."  Ebner thereafter advised Sullivan that she had confirmed the presence of the flood zone shown on the ILC would not have any material impact to the demolition of the existing structures or the redevelopment of the property as a single-family home (with garage).  Sullivan reasonably

relied upon Ebner's representation that she had investigated the issue and had confirmed that there were no redevelopment issues of concern relating to the flood zone identified on the ILC.

Despite Ebner's express representations, in fact the Town of Crested Butte has not allowed demolition of a structure that is in or partially in a designated flood zone. Despite Ebner's express representations, in fact the Town of Crested Butte has not allowed redevelopment of any new structure on a lot of which any portion is in the flood zone (per the 2013 FEMA line shown on the ILC) unless and until the owner first obtains a comprehensive flood plain determination involving the creating of base flood elevations and the determination of 100-year flood levels for Coal Creek (the source of the flood concern) does not reach any portion of the property.

Sullivan has expended months of time and thousands of dollars on attorneys and engineers to attempt to satisfy the Town of Crested Butte but has been unable to obtain any approval or agreement that the existing garage can be removed or that a new home can be constructed at 113 Sopris. This work is ongoing and continues at substantial financial cost, considerable delay, and extensive personal and emotional stress on Sullivan and his family who remain unable to permit and construct their residence at 113 Sopris. Sullivan never would have closed on 113 Sopris but for the assumption of duty Ebner undertook relating to the flood zone concerns Sullivan raised and the false representations and assurances provided by Ebner as stated herein relating to the flood zone.

Prior to the closing on the PSA on July 25, 2018, Ebner again affirmed to Sullivan that she had confirmed the home at 113 Sopris was not historic and could be easily razed, the garage could be demolished despite being partially in a flood zone as shown on the ILC, a new home and garage

5

could be constructed without difficulty (provided that Sullivan's new home and garage met the Town of Crested Butte design guidelines as to design, color, location, size, height, and such other requirements). This included a meeting at the Ebner RE offices between Sullivan and Ebner on or about July 22, 2018 at which time Sullivan specifically raised the issue, in detail, because of a dispute that had arisen regarding the details of a snow-storage easement the Seller was requesting and for which the title company was unable to property cover in its title policy, including the removal of prior easements that had to be removed as a condition of closing.

The PSA closed on July 25, 2018. Sullivan paid 100% of the purchase price in cash. Following closing, Sullivan met with prospective contractors, architects and other professionals to immediately commence all activities necessary to demolish the existing structures and construct a new home (and garage). On August 13, 2018, consistent with all stated intents and plans, Sullivan proceeded to retain a surveyor and geotechnical engineer and shortly thereafter Somrak Concept and Structure for design/permit/construction of his new home. On August 17, 2018, Sullivan received a phone call from Veit, a contractor Sullivan was considering, that he immediately communicated to Ebner as follows, requesting that she identify by name who she spoke with at the Town of Crested Butte to determine if it is the same person Veit claims to have spoken with:

> "I was advised this morning that I cannot demolish the A-Frame on the property because the Town of CB considers it historic. This of course would be contrary to the representations made when I bought the property and the listing itself and every understanding I had. Before I hire Huck on the matter, I was hoping that you can confirm who you spoke with at the town to confirm it was not historic and/or who

6

the seller's agent had done so. The person who gave me this info is Tony Veit based upon his meeting with Molly Murphy (sic) [Minneman], whom I am told is the person who would speak for the town on the matter."

By reply email of the same date, Ebner responded that "The people to talk to at town are Jessica Early and Molly Minneman.  They are the experts in the historic properties.  It was represented that the property could be demolished by the listing in multiple places including the previous listings in our MLS."  Ebner also stated that she quickly confirmed herself that the Town considered 113 Sopris historic because "The building is listed on the historic registry…" and, in 1974, was already "10 years old" – meaning that the home was over 50 years at the time of sale which would make it historic under the Town's policy.

At no time prior had Ebner stated, suggested or hinted that she relied upon another agent for her factual representations regarding the historical status of 113 Sopris and how easily she claimed it would be to demolish the existing structures.  In fact, she had represented specifically to the contrary.  Thereafter, Ebner failed to provide any assistance in any material way in seeking a resolution of this issue, Ebner failed to provide any evidence of the communications she had previously claimed to have with Town officials, Ebner failed to provide any evidence of communications she had with seller or seller's agent, Kathy Benson, regarding her factual representation to Sullivan that she had investigated the issue and the home was, in fact, not historic and could be easily demolished and replaced.

On or about January 7, 2019, the Town of Crested adopted an emergency moratorium on demolition of structures within the Town.  This ordinance would have had no impact upon Sullivan

but for the Defendants' negligence, professional negligence, misrepresentations, and breaches of duty.  Among other things, Sullivan would not have purchased 113 Sopris and bought another property had he been accurately informed by Ebner of the truth of matters she undertook, and represented she undertook, to investigate and advise Sullivan on, including historical status, demolition, redevelopment and flood zone issues herein described.  On or about July 15, 2019, the Town of Crested Butte lifted the moratorium on all non-historic structures.  If the home on 113 Sopris was not historic as represented by Ebner or otherwise unimpacted by the flood zone designation, Sullivan could have obtained entitlements to demolish the garage and home and redevelop the property following this action.

On September 16, 2019, the Town of Crested Butte adopted Ordinance 2019-34 which changed the standards for what constitutes a historic structure, under which ordinance the home at 113 Sopris is no longer considered historic.  Ordinance 2019-34, however, materially changed the requirements for demolition of non-historic structures and, in addition, imposed a substantial and permanent restriction on all properties where an existing home is to be demolished and replaced with any new home that is more than 1 square foot larger in size than the structure that is demolished.  Sullivan would not be subject to Ordinance 2019-34 but for the conduct of Ebner because Sullivan would not have purchased the property and would have purchased another suitable property and enjoyed all of the benefits of living in such home and gaining the appreciation of such home or, alternatively, had 113 Sopris been of the condition actually represented by Ebner than Sullivan would have long past obtained the vesting entitlements to allow him to proceed with demolition and construction of his new family home without such impairments.

Sullivan remains unable to demolish and redevelop a primary residence at 113 Sopris and has incurred out-of-pocket expenses in attempting to resolve these issues, expended hundreds of hours of his professional time away from his job and family on such matters, and suffered substantial and continued distress due to his family's inability to take up residence for all or part of the year at a home suitable for them.

Based on those facts, the Sullivans have asserted the following claims against Defendants:

(a) Breach of Fiduciary Duty;

(b) Misrepresentation;

(c) Negligence; and

(d) Constructive Fraud.

**2. Defendants:** Defendants deny any and all liability to Plaintiffs. Ms. Ebner served as a transaction-broker and worked with Plaintiff Barry Sullivan in the subject transaction to purchase the property located at 113 Sopris Avenue, Crested Butte, Colorado 81224 ("the Property"). Ms. Ebner met the standard of care for a transaction-broker. Ms. Ebner did not owe a fiduciary duty Mr. Sullivan. Ms. Ebner did not have a duty to investigate or confirm whether the Property was considered historic based on Crested Butte town ordinances or zoning requirements. Ms. Ebner also did not have a duty to verify the statements of the sellers for Mr. Sullivan's benefit. The Property was not considered historic, based in part on the fact that the Property was constructed outside the time period of significance and was not critical to the makeup of the neighborhood. Ms. Ebner also relied upon the representations of the seller and the seller's real estate agent. Ms. Ebner was not asked and could not have predicted future events and decisions by the Town of Crested Butte. Ms. Ebner did not misrepresent the condition or status of the Property; she explained her

9

understanding to Mr. Sullivan. Plaintiffs conducted their own due diligence in deciding whether the Property would suit their needs and plans. Any alleged misrepresentations were statements of opinion, predictions of future events, or puffery for which no action lies. Plaintiffs did not reasonably or justifiably rely on any alleged misrepresentations attributed to Defendants. Ms. Ebner did not commit any type of fraud in serving as Mr. Sullivan's buyer's agent. She did not force or coerce Mr. Sullivan into purchasing the Property against his wishes. Mr. Sullivan is a sophisticated real estate consumer, being an attorney, real estate investor, and developer. He and his wife have numerous resources in addition to their knowledge and experience with real estate investing, including local sources of information, use of attorneys and others as part of the due diligence process. Record evidence demonstrates that Ms. Ebner's explanation that the Property is not historic and may be taken down is factually accurate. In January 2020, the local zoning board ultimately authorized Mr. Sullivan's development plan to demolish the home because the home was not historic.

Defendant Ebner Real Estate had no contractual relationship with Plaintiffs. Ebner Real Estate owed no duties to Plaintiffs.

Defendants incorporate by reference all defenses asserted in their Answer to Plaintiffs' Amended Complaint, including that Plaintiffs' claims are limited or barred by their own negligence or assumption of the risk; Plaintiffs' claims may be barred by the doctrines of waiver, acquiescence, consent, estoppel, ratification, authorization, and the economic loss rule; Plaintiffs' claims are barred or reduced by a failure to mitigate their damages, if any; Plaintiffs' claims are duplicative. Plaintiffs received actual or constructive notice of the condition and status of the Property through other sources. Defendants assert that Plaintiffs'

alleged damages are remote and speculative or are not a consequence of any alleged misconduct of Defendants. Plaintiffs failed to meet the higher pleading standard to assert fraud.

There are non-parties at fault, including the seller, DBC Limited Partnership, the seller's agent, Catherine Benson, and agents or representatives of the Town of Crested Butte, among others. Any settlement with those parties may entitle Defendants to a set-off.

### 4. UNDISPUTED FACTS

The following facts are undisputed:

1. Ebner Real Estate, LLC dba Signature Properties Ebner & Associates aka Ebner & Associates Signature Properties is a Colorado Limited Liability Company with a principal office street address of 123 Whiterock Avenue, Crested Butte, CO 81224, and a principal office mailing address of P.O. Box 2452, 123 Whiterock Avenue, Crested Butte, CO 81224.

2. The sole member of Ebner Real Estate, LLC is Defendant Jesse Ebner, who is a citizen of Colorado.

3. Jesse Ebner is an individual with a postal office address of PO Box 2452, Crested Butte, CO 81224, and a physical address of 326 Elk Avenue, Suite D, Crested Butte, CO 81224.

4. Ebner is the licensed real estate broker for Ebner Real Estate, LLC dba Signature Properties Ebner & Associates aka Ebner & Associates Signature Properties ("Ebner Real Estate").

5. Sullivan signed a purchase and sale agreement ("PSA") to acquire the Property for $820,00.00.

6. The PSA closed on July 25, 2018. Sullivan paid 100% of the purchase price in cash. Sullivan directed title to be taken jointly with his wife Jennifer Diesman Sullivan.

7. Ebner earned a commission at the closing of the Property of over $24,000.

## 5. COMPUTATION OF DAMAGES

The following are Plaintiffs' likely categories of damages:

    1.    The difference in the actual value of the subject property at the time of purchase and the <u>value as of the date of trial</u> if it were in the condition as represented (this category is currently estimated to be in a range from $220,000 to $580,000, subject to further analysis <u>and expert report and testimony</u>); and

    2.    The cost to Plaintiffs of putting the property in the condition that would bring it into conformity with the value of the property as it was represented, if possible (this category is currently estimated to be in a range from $40,000 to $100,000, subject to further analysis and developments).

## 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

   a. The parties met for their Preconference meeting on September 9, 2020.

   b. Plaintiffs were represented by Neal Cohen and Jennifer Sullivan. Defendants were represented by James M. Meseck and E. Catlynne Shadakofsky.

   c. The parties agreed to make their Rule 26(a)(1) disclosures on September 23, 2020.

   d. Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).

      None.

   e. Statement concerning any agreements to conduct informal discovery:

The parties agreed to explore the possibility of joint interviews of witnesses, video or Zoom depositions for people outside the Denver metropolitan area, and to exchange documents pursuant to Rule 26 prior to formal discovery.

    f.   Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.

In addition to the foregoing, the parties agree to use a unified exhibit numbering system.

    g.   Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.

The parties do not anticipate that their claims and defenses will involve an extensive amount of electronically store information. The bulk of the documents will be emails, and possibly some text messages and electronic calendars.

    h.   Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.

The parties discussed the possibility of settlement.

**Plaintiffs:** Plaintiffs are ready, willing and able to engage in settlement discussions as soon as possible.

**Defendants:** Defendants are willing to engage in settlement discussions once a better understanding of the facts, legal theories, and claims and damages are understood.

### 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

# 8. DISCOVERY LIMITATIONS

a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

None.

b. Limitations which any party proposes on the length of depositions.

The parties agree to limit the length of depositions to 7 hours.

c. Limitations which any party proposes on the number of requests for production and/or requests for admission.

None.

d. Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:

45 days prior to the discovery cutoff.

e. Other Planning or Discovery Orders

None.

# 9. CASE PLAN AND SCHEDULE

a. Deadline for Joinder of Parties and Amendment of Pleadings:

November 1, 2020

b. Deadline for Designation of Non-Parties:

October 21, 2020

c. Discovery Cut-off:

May 24, 2021

d. Dispositive Motion Deadline:

June 28, 2021

 e. Expert Witness Disclosure

  1. The parties shall identify anticipated fields of expert testimony, if any.

  The parties have identified the following fields for expert testimony: a broker's standard of care, rules and regulations of the Town of Crested Butte regarding residential development, appraisals of subject property, damages incurred from the restrictions of residential development of the subject property.

  2. Limitations which the parties propose on the use or number of expert witnesses.

  3. No more than 4 per side, inclusive of rebuttal experts.

The parties shall designate all experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before <u>March 15</u>, 2021.

  4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before April 15 , 2021.

*[Notwithstanding the provisions of Fed. R. Civ. P. 26(a)(2)(B), no exception to the requirements of the Rule will be allowed by stipulation unless the stipulation is in writing and approved by the court. In addition to the requirements set forth in Rule 26(a)(2)(B)(I)-(vi), the expert's written report also must identify the principles and methods on which the expert relied in support of his/her opinions and describe how the expert applied those principles and methods reliably to the facts of the case relevant to the opinions set forth in the written report.]*

 e. Identification of Persons to Be Deposed:

  **Plaintiffs:** Jesse Ebner (6 hours),;

        Town of Crested Butte official or officials (5 hours);

        Any person identified by Defendants

**Defendants:**
Barry Sullivan (7 hours)
Jennifer Sullivan (2 hours)
Representative of the Town of Crested Butte (5 hours)
Seller DBC Limited Partnership (David and Bette Chenault) (3 hours)
Seller's agent, Catherine Benson (3 hours)
Contractor Tony Veit (3 hours)

## 10. DATES FOR FURTHER CONFERENCES

*[The magistrate judge will complete this section at the scheduling conference if he or she has not already set deadlines by an order filed before the conference.]*

a. Status conferences will be held in this case at the following dates and times:

    April 19, 2021

b. A final pretrial conference will be held in this case on _____ at o'clock \_\_\_\_m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

## 11. OTHER SCHEDULING MATTERS

a. Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.

b. Anticipated length of trial and whether trial is to the court or jury.

    **Plaintiffs:** 5 days

    **Defendants:** 5 days

c. Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street, Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, La Plata

County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

*[The following paragraphs shall be included in the scheduling order:]*

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

This Scheduling Order may be altered or amended only upon a showing of good cause.

DATED at Grand Junction, Colorado, this 6th day of Oct., 20 20.

BY THE COURT:

United States Magistrate Judge
Gordon P. Gallagher

APPROVED:

| Neal Cohen | James Meseck |
|---|---|
| *s/Neal Cohen* | *s/James Meseck* |
| Sullivan Cohen | White and Steele, P.C. |
| 1495 Canyon Blvd. | 600 17th Street, Suite 600N |
| Boulder, CO 80302 | Denver, CO 80202 |
| 303 835-4993 | 303 296-2828 |
| Attorney for Plaintiffs | Attorney for Defendants |